**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **AMANDA CLARE, individually and on behalf of a class of all other persons similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Case No.** |
| **GREATBANC TRUST COMPANY, LONG POINT CAPITAL, INC., LONG POINT CAPITAL FUND II, L.P., LONG POINT CAPITAL PARTNERS II, L.P., LONG POINT CAPITAL FUND III, L.P., and LONG POINT CAPITAL PARTNERS III, L.P.,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Amanda Clare, by her undersigned attorneys, individually and on behalf of similarly situated participants in the EYP Employee Stock Ownership Plan and their beneficiaries, alleges upon personal knowledge, the investigation of her counsel, and upon information and belief as to all other matters, as to which allegations she believes substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.      Plaintiff Amanda Clare ("Plaintiff") brings this suit against GreatBanc Trust Company ("GreatBanc"), the trustee for the EYP Employee Stock Ownership Plan (the "Plan") when the Plan acquired shares of EYP Group Holdings, Inc. ("EYP") in 2016, and against selling shareholders Long Point Capital, Inc. ("Long Point") and its affiliates Long Point Capital Fund II, L.P., Long Point Capital Partners II, L.P., Long Point Capital Fund III, L.P., and Long Point

Capital Partners III, L.P. (together, "Defendant Shareholders," and with GreatBanc, "Defendants").

2.      Plaintiff is a participant in the Plan, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), who was vested in shares of EYP allocated to her account in the Plan.

3.      This action is brought under Sections 404, 406, 409, 410, and 502(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1109, 1110, and 1132(a), for losses suffered by the Plan and its participants caused by GreatBanc when it caused the Plan to buy shares of EYP for more than fair market value in 2016 and other relief.

4.      As alleged below, the Plan has been injured and its participants have been deprived of hard-earned retirement benefits resulting from Defendants' violations of ERISA.

5.      At all relevant times, EYP was a privately held company and a party in interest to the Plan.

6.      EYP's predecessor, EYP Holdings, Inc., adopted the Plan effective January 1, 2016. On June 28, 2016, in simultaneous or nearly simultaneous transactions, EYP purchased its common stock from the Defendant Shareholders and minority shareholders, and the Plan purchased 1,000,000 shares of EYP's common stock from EYP for $44,286,647. The Plan's stock purchase was financed by a term note payable owed to EYP by the Plan of $44,286,647, to be repaid over 40 years, at an interest rate of 3% (the purchase and loan transactions together, the "ESOP Transaction" or "Transaction"). At that time, EYP became 100% employee owned.

7.      GreatBanc represented the Plan and its participants as Trustee in the ESOP Transaction. It had sole and exclusive authority to negotiate the terms of the ESOP Transaction on the Plan's behalf.

8.     The ESOP Transaction allowed the selling shareholders, including Defendant Shareholders and minority shareholders ("Selling Shareholders"), to unload their interests in EYP above fair market value and saddle the Plan with tens of millions of dollars of debt over a 40-year repayment period to finance the Transaction. GreatBanc failed to fulfill its ERISA duties, as Trustee and fiduciary, to the Plan and its participants, including Plaintiff.

9.     Defendant Shareholders are parties in interest who, as a controlling shareholder group, sold EYP shares in the ESOP Transaction and received proceeds from the Transaction. Defendant Shareholders are liable under ERISA for participating in the prohibited transactions and in GreatBanc's breaches of fiduciary duty.

10.     Plaintiff brings this action to recover the losses incurred by the Plan, and thus by each individual account in the Plan held by her and similarly situated participants, resulting from GreatBanc's engaging in, and causing the Plan to engage in, prohibited transactions under ERISA, and breaching its fiduciary duties under ERISA, and the Defendant Shareholders' participation in these violations.

## JURISDICTION AND VENUE

11.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiff under ERISA § 502(a), 29 U.S.C. § 1132(a), to require GreatBanc to make good to the Plan losses resulting from its violations of the provisions of Title I of ERISA, to obtain appropriate equitable relief against GreatBanc and Defendant Shareholders, to restore to the Plan any profits that have been made by breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of ERISA.

12.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

13.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant GreatBanc resides or may be found in this District, and because some of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

14.     Plaintiff Amanda Clare is and has been a Plan participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), since September 1, 2016. Plaintiff Clare resides in Seabrook, Texas. She was a Lead Project Coordinator at EYP. She was employed there from August 8, 2016 to June 12, 2020. She was vested by the Plan's terms in shares of EYP in her Plan account.

15.     Defendant GreatBanc is one of the largest independent trust companies in the nation. Its headquarters is at 801 Warrenville Road, Suite 500, Lisle, Illinois 60532. GreatBanc is a subsidiary of U.S. Fiduciary Services, Inc., which is also headquartered at 801 Warrenville Road, Suite 500, Lisle, Illinois 60532. GreatBanc was incorporated in Illinois on December 1, 1989.

16.     Defendant GreatBanc was the Trustee of the Plan at the time of and for the ESOP Transaction. As Trustee, GreatBanc had exclusive discretion to authorize the ESOP Transaction on behalf of the Plan. GreatBanc has been the ongoing Trustee of the Plan from the ESOP Transaction to the present.

17.     GreatBanc is and was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it is and was the Plan's Trustee, within the meaning of ERISA § 403(a), 29 U.S.C. § 1103(a), and because it exercised discretionary authority or discretionary control respecting management of the Plan, and/or exercised authority or control respecting

management or distribution of the Plan's assets, and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

18.     The Notes to Financial Statements of the Plan's Forms 5500 report that GreatBanc was the Plan's Trustee and that service providers to the Plan are parties in interest under ERISA.

19.     GreatBanc is and was a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as a fiduciary of the Plan and as a provider of services to the Plan.

20.     Defendant Long Point Capital, Inc. ("Long Point") bills itself as a private equity firm, founded in 1998, that partners with and invests in successful founder and family-owned lower middle-market businesses with total enterprise values between $25 million and $250 million. Its principal place of business is at 747 Third Ave., 22nd Floor, New York, New York 10017. Long Point was incorporated in Delaware on December 4, 1997. Long Point managed Long Point Capital Fund II, L.P. and Long Point Capital Fund III, L.P. at all relevant times.

21.     Defendant Long Point Capital Fund II, L.P. is a limited partnership with its principal place of business at 747 Third Ave., 22nd Floor, New York, New York 10017. It was formed in Delaware on July 16, 2003.

22.     Defendant Long Point Capital Partners II, L.P. is a limited partnership with its principal place of business at 747 Third Ave., 22nd Floor, New York, New York 10017. It was formed in Delaware on October 22, 2004.

23.     Defendant Long Point Capital Fund III, L.P. is a limited partnership with its principal place of business at 747 Third Ave., 22nd Floor, New York, New York 10017. It was formed in Delaware on September 9, 2014.

24.     Defendant Long Point Capital Partners III, L.P. is a limited partnership with its principal place of business at 747 Third Ave., 22nd Floor, New York, New York 10017. It was formed in Delaware on September 9, 2014.

## FACTUAL ALLEGATIONS

25.     Headquartered in Albany, New York, EYP bills itself as the leading architecture and engineering firm developing new ideas and design solutions with mission-driven clients in higher education, government, healthcare, and science and technology. EYP was founded, through its predecessor, in 1972. EYP has more than 600 employees in at least ten offices located throughout the United States, and is a global provider of comprehensive building design, research, and related consulting services. EYP was at all times a private company. There is and was no public market for EYP stock.

26.     EYP was incorporated in Delaware on June 28, 2016.

27.     EYP is headquartered at 201 Fuller Road, 5th Floor, Albany, New York 12203.

28.     EYP is a holding company.

29.     EYP is, and has been since its incorporation on June 28, 2016, an S Corporation.

30.     EYP stock is not readily tradable on an established securities market.

31.     EYP's predecessor EYP Holdings, Inc. adopted the Plan effective January 1, 2016.

32.     The Plan is a pension plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and is subject to ERISA pursuant to ERISA § 4(a)(1), 29 U.S.C. § 1003(a)(1).

33.     The Plan is a leveraged employee stock ownership plan, or "Leveraged ESOP." The Plan was designed to invest primarily in the employer securities of EYP.

34.     The Plan's principal asset was EYP stock at all times since the ESOP Transaction.

35.     The Plan is an individual account plan, or defined contribution plan, under which a separate individual account was established for each participant.

36.     EYP is and was at the time of the ESOP Transaction the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

37.     Employees of EYP, including its subsidiaries and any affiliated "Participating Employer" under the Plan, participate in the Plan.

38.     EYP is and was the Plan's administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

39.     The Plan's Forms 5500 report at Part II Lines 2a & 3a that EYP is and was the Plan's administrator.

40.     EYP is and was an ERISA fiduciary to the Plan as its administrator.

41.     The Schedules H, Line 4i -Schedule of Assets (Held At End of Year) to the Plan's Forms 5500 Annual Return/Report state that EYP is a fiduciary and a party in interest to the Plan.

42.     The Notes to Financial Statements in the Plan's Forms 5500 report that the stock and loan transactions in the ESOP Transaction were party in interest transactions.

43.     EYP is and was at the time of the ESOP Transaction a party in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14).

44.     Defendant Shareholders purchased stock in EYP's predecessor in 2011.

45.     Defendant Shareholders were  EYP's controlling shareholder group at the time of the ESOP Transaction.

46.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. At the time of the ESOP Transaction, Defendant Shareholders were parties in interest

to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as 10 percent or more shareholders of EYP, directly or indirectly; as owners, directly or indirectly, of 50 percent or more of (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation, (ii) the capital interest or the profits interest of a partnership, or (iii) the beneficial interest of a trust or unincorporated enterprise, which is an employer of Plan participants; a corporation, partnership, or trust or estate of which (or in which) 50 percent or more of—(i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation, (ii) the capital interest or profits interest of such partnership, or (iii) the beneficial interest of such trust or estate, is owned directly or indirectly, or held by a 50 percent owner described above; and/or as directors of EYP or persons with powers or responsibilities similar to directors. In addition to Defendant Shareholders, other Selling Shareholders were parties in interest to the Plan at the time of the ESOP Transaction as EYP employees, officers, and/or directors.

47.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. In or about 2011, Long Point, through its affiliates Long Point Capital Fund II, L.P. and/or Long Point Capital Partners II, L.P., invested approximately $9 million into EYP's predecessor and certain affiliates. On or about June 28, 2016, Long Point's affiliates, including Long Point Capital Fund III, L.P. and/or Long Point Capital Partners III, L.P., received more than $40 million in cash in the Transaction.

48.     EYP or its predecessor appointed GreatBanc as Trustee of the Plan. As Trustee, GreatBanc had sole and exclusive authority to negotiate and approve the ESOP Transaction on behalf of the Plan, including the price the Plan paid for EYP stock.

49. As Trustee for the Plan, it was GreatBanc's exclusive duty to ensure that any transactions between the Plan and EYP and between the Plan and the Selling Shareholders, including acquisitions of EYP stock by the Plan and loans to the Plan, were fair and reasonable and to ensure that the Plan paid no more than fair market value.

50. On June 28, 2016, the Plan purchased from EYP and from the Selling Shareholders, directly or indirectly, 1,000,000 shares of EYP's common stock for $44,286,647.

51. At that time, EYP became 100% employee owned.

52. The Plan's stock purchase was financed by a term note payable owed to EYP by the Plan of $44,286,647, to be repaid over 40 years, at an interest rate of 3%.

53. Plaintiff Clare was allocated shares of EYP stock in her individual account in the Plan in 2017, 2018, and 2019. She was vested in EYP shares in her Plan account.

54. Former minority shareholders, including employees of EYP, allege in other litigation that the Plan paid an improperly "highly-inflated stock price" for EYP stock in the ESOP Transaction, and Defendant Shareholders received cash for their EYP shares, while minority shareholders received notes.

55. As alleged in litigation brought by former minority shareholders, Long Point controlled the EYP Board of Directors prior to and at the time of the ESOP Transaction. EYP, under the control of Long Point, hired the allegedly "corrupt" GreatBanc for the ESOP Transaction.

56. Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. EYP and/or Defendant Shareholders provided financial projections to GreatBanc for the valuation for the ESOP Transaction. The financial projections were unreasonably optimistic.

Among other inaccuracies, the revenue projections improperly included SUNY Polytechnic Institute contracts when business from that customer would likely decline substantially or disappear. GreatBanc improperly used or relied upon information, analysis and valuation of the seller-side of the Transaction and failed to prudently negotiate for the Plan's purchase of EYP stock at fair market value.

57.     While the Plan paid $44,286,647 for the 1,000,000 shares of EYP's common stock on June 28, 2016, the fair value of the stock was revalued at $12,250,000 as of December 31, 2016. Dropping further on a new valuation as of December 31, 2017, the EYP stock was revalued at $4,000,000. Dropping further on a new valuation as of December 31, 2018, the EYP stock was revalued at $3,100,000. Dropping further on a new valuation as of December 31, 2019, the EYP stock was revalued at $2,050,000.  Plaintiff does not aver that any of these valuations was accurate.

58.     As alleged in a complaint filed by former minority shareholders in November 2020, EYP is insolvent.

59.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. GreatBanc did not perform due diligence in the course of the ESOP Transaction similar to the due diligence that is performed by third-party buyers in large corporate transactions. GreatBanc's due diligence in the ESOP Transaction was less extensive and thorough than the due diligence performed by third-party buyers in corporate transactions of similar size and complexity. The Plan overpaid for EYP stock in the ESOP Transaction due to GreatBanc's reliance on unrealistic growth projections, unreliable or out-of-date financials, improper discount rates, inappropriate guideline public companies for comparison, and/or its failure to test assumptions, failure to question or challenge underlying assumptions, and/or other factors that rendered the

valuation of EYP stock in the ESOP Transaction faulty. GreatBanc further improperly relied on the seller-side valuation rather than the valuation of its valuator and its own due diligence.

60.     Incentives to GreatBanc to act in favor of the Selling Shareholders in the ESOP Transaction in breach of its duty of loyalty included the possibility of business from sellers of companies who understood that GreatBanc applied a lesser degree of due diligence in ESOP purchases of businesses than is typical for non-ESOP-buyers' purchases of businesses, including further business from private equity firm Long Point, and engagement as the Plan's ongoing trustee after the ESOP Transaction and the fees paid for that engagement.

61.     Long Point has used GreatBanc as ESOP trustee in numerous other ESOP transactions, such as transactions for the purchase of Atlantic Plywood, The Saxton Group, and UMA Enterprises.

62.     K&L Gates represented GreatBanc, in its capacity as Plan Trustee, in the ESOP Transaction.

63.     K&L Gates represented Long Point in the ESOP Transaction.

64.     K&L Gates has represented Long Point in numerous other ESOP transactions, such as transactions for the sale of Atlantic Plywood, The Saxton Group, UMA Enterprises, Hire Counsel, Mestel & Company, Sunbury Textile Mills, and Torrent Resources.

65.     GreatBanc's engagement of K&L Gates, Long Point's legal counsel, further demonstrates GreatBanc's breach of its fiduciary duties of care, prudence and loyalty to the Plan.

66.     GreatBanc is liable to the Plan for the difference between the price paid by the Plan and the actual value of EYP shares at the time of the ESOP Transaction.

67.     The Defendant Shareholders are liable to the Plan to repay the difference between the price they received and the actual value of their EYP shares at the time of the ESOP Transaction.

68.     GreatBanc has received consideration for its own personal account from EYP for its services in the ESOP Transaction in the form of fees, under a contract made when the Selling Shareholders owned EYP.

69.     Pursuant to GreatBanc's engagement agreement and/or trust agreement, EYP, at a time that it was owned by the Selling Shareholders, agreed to indemnify GreatBanc as Plan Trustee in connection with the ESOP Transaction ("Indemnification Agreement"). The Indemnification Agreement is something of value, potentially worth millions of dollars of defense costs and/or liability in ERISA private company ESOP litigation.

70.     Plaintiff further alleges that the following factual allegations in this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. EYP agreed to give GreatBanc as Plan Trustee, and GreatBanc's officers, directors, employees and agents, indemnification for any loss, cost, expense, or other damage, including attorney's fees, in connection with their services in the ESOP Transaction. The Indemnification Agreement does not contain an exemption addressing violation of the *per se* prohibited transaction rules under ERISA § 406. The Indemnification Agreement does not require payment of interest or otherwise account for the time value of money should GreatBanc ultimately be required to reimburse EYP.

71.     The Indemnification Agreement is invalid under ERISA § 410(a), 29 U.S.C. § 1110(a), as against public policy because GreatBanc violated its ERISA duties to the Plan, and

its legal defense and liability for the Plan's losses should not be paid by the company that the Plan owns.

72.     Payment by EYP of millions of dollars of attorneys' fees, costs, litigation expenses, and liabilities to GreatBanc necessarily would adversely impact EYP's equity value and therefore the value of Plan assets. Direct payment or reimbursement of GreatBanc's attorneys' fees, costs, litigation expenses, and liabilities by EYP, or the Plan that owns it, would adversely affect the Plan and Plaintiff's and other participants' financial interests.

### CLAIMS FOR RELIEF

### COUNT I

**Causing and Engaging in Prohibited Transactions Forbidden by
ERISA § 406(a)–(b), 29 U.S.C. § 1106(a)–(b), Against GreatBanc**

73.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

74.     ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), prohibits a plan fiduciary, here GreatBanc, from causing a plan, here the Plan, to engage in a sale or exchange of any property, here EYP stock, with a party in interest, here EYP and Selling Shareholders, as took place in the ESOP Transaction.

75.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits GreatBanc from causing the Plan to borrow money from a party in interest, here EYP, as took place in the ESOP Transaction.

76.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits GreatBanc from causing the Plan to engage in a transaction that constitutes a direct or indirect transfer to, or use by or for the benefit of, a party in interest, here Selling Shareholders and EYP, of any assets of the Plan, as took place in and after the ESOP Transaction with the transfer of Plan assets as payment for EYP stock and in continuing payments on the loan.

77.     The stock and loan transactions between the Plan and the parties in interest were authorized by GreatBanc in its capacity as Trustee for the Plan.

78.     GreatBanc caused the Plan to engage in prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a), in the ESOP Transaction.

79.     ERISA § 406(b), 29 U.S.C. § 1106(b), *inter alia*, mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

80.     GreatBanc caused the Plan to acquire EYP stock from the Selling Shareholders and EYP above fair market value and with the proceeds of a loan that was used to pay the Selling Shareholders. This primarily benefited the Selling Shareholders to the substantial detriment of the Plan and its participants and beneficiaries, even though GreatBanc was required to act solely in the interests of the Plan's participants and beneficiaries in connection with any such transaction.

81.     GreatBanc received consideration for its own personal account from EYP—fees and an indemnification agreement—as Trustee for the Plan in the ESOP Transaction, in violation of ERISA § 406(b)(3).

82.     GreatBanc caused and engaged in prohibited transactions in violation of ERISA § 406(b) in the ESOP Transaction.

83.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any

losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

84.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

85.     GreatBanc has caused losses to the Plan by the prohibited transactions in an amount to be proved specifically at trial.

## COUNT II

### Breaches of Fiduciary Duty Under ERISA § 404(a), 29 U.S.C. § 1104(a), Against GreatBanc

86.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

87.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

88.     The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

89.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

90.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

91.     GreatBanc was required to undertake an appropriate and independent investigation of the fair market value of EYP stock in or about June 2016 in order to fulfill its fiduciary duties, and an appropriate investigation would have revealed that the valuation used for the ESOP Transaction did not reflect the fair market value of the EYP stock purchased by the Plan.

92.     GreatBanc was required to act independently on behalf of the Plan and not rely on the seller-side valuation.

93.     GreatBanc was required to negotiate for the Plan to pay no more than fair market value for EYP stock in the ESOP transaction, and it failed to do so.

94.     GreatBanc breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

95.     GreatBanc has caused losses to the Plan by its breaches of fiduciary duty in an amount to be proved specifically at trial.

## COUNT III

### Violation of ERISA §§ 410 and 404(a)(1)(A), (B),<br>29 U.S.C. §§ 1110 and 1104(a)(1)(A), (B), Against GreatBanc

96.     Plaintiff incorporates the preceding paragraphs as though set forth herein.

97.     ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [Part IV of Subtitle B of Title I of ERISA] shall be void as against public policy." As ERISA § 406 is under Part IV, any provision that attempts to relieve GreatBanc, a Plan fiduciary, of responsibility or liability is void pursuant to ERISA § 410(a) unless there is an exception or exemption. No such exception or exemption is applicable to the Count I claim here.

98.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate.

99.     ERISA § 502(a), 29 U.S.C. § 1132(a), permits a plan participant to bring a suit for relief under ERISA § 409 and to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

100.    The indemnification agreement purports to provide payment or reimbursement for the benefit of GreatBanc for its losses, costs, expenses, or other damages, including attorney's fees.

101.    To the extent that the indemnification agreement attempts to relieve GreatBanc of its responsibility or liability to discharge its duties under ERISA, or attempts to have EYP (a Plan-owned company) and thereby the Plan be responsible for GreatBanc's liability for breaches of the statute, including but not limited to defense costs, such provisions are void as against public policy.

102.    To the extent that any of the fiduciaries of the Plan would agree to the exercise of such a provision that is void against public policy under ERISA § 410, they breached their

fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B). *See also* ERISA § 403(c)(1), 29 U.S.C. § 1103(c)(1).

103.    As a result of the foregoing, should it be held liable under the preceding Count I, GreatBanc should be ordered to disgorge any indemnification payments made by EYP and/or the Plan, plus interest.

## COUNT IV

**Prohibited Transactions Pursuant to 29 U.S.C. § 1132(a)(3), Against Long Point Capital, Inc., Long Point Capital Fund II, L.P., Long Point Capital Partners II, L.P., Long Point Capital Fund III, L.P., and Long Point Capital Partners III, L.P.**

104.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

105.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a civil action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

106.    The Supreme Court has held that anyone, including a non-fiduciary, who receives the benefit of conduct that violates ERISA may be subject to equitable remedies under ERISA § 502(a)(3) if they have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000).

107.    As a result of the prohibited transactions described above, Defendant Shareholders received Plan assets in payments above fair market value for their EYP stock.

108.    Defendant Shareholders were parties in interest to the Plan under ERISA § 3(14), 29 U.S.C. § 1002(14), as described above.

109.    Defendant Shareholders knew or should have known (1) about the existence of the Plan, (2) about the Plan's purchase of their EYP stock in the ESOP Transaction, (3) that GreatBanc was a fiduciary to the Plan, (4) that the ESOP Transaction was for above fair market value, (5) that GreatBanc caused the Plan to engage in transactions prohibited under ERISA § 406(a) and (b), 29 U.S.C. § 1106(a) and (b), (6) that GreatBanc breached its fiduciary duties under ERISA, and (7) that the true purpose of the ESOP Transaction was to benefit Selling Shareholders.

110.    As the controlling shareholder group that appointed directors of EYP—including Long Point co-founders, partners and/or principals—as Selling Shareholders, and as a private equity firm that has engaged in numerous ESOP transactions with its portfolio companies, Defendant Shareholders were aware of sufficient facts that the ESOP Transaction constituted a prohibited transaction with parties in interest. As parties in interest, Defendant Shareholders are liable for violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

111.    Defendant Shareholders have profited from the prohibited transactions in an amount to be proven at trial, and upon information and belief, they remain in possession of some or all of the assets that belong to the Plan.

112.    Defendant Shareholders are subject to appropriate equitable relief including disgorgement of any profits, accounting for profits, surcharge, having a constructive trust placed on any proceeds received (or which are traceable thereto), having the transactions rescinded, requiring all or part of the consideration to be restored to the Plan, or to be subject to other appropriate equitable relief.

## CLASS ACTION ALLEGATIONS

113.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All participants in the EYP Employee Stock Ownership Plan (the "Plan") and the beneficiaries of such participants as of the date of the June 28, 2016 ESOP Transaction or anytime thereafter. Excluded from the Class are the directors and officers of EYP Group Holdings, Inc. ("EYP") and their immediate families; the shareholders who sold the stock of EYP to EYP or the Plan on June 28, 2016; and legal representatives, successors, and assigns of any such excluded persons.

114.     The Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class members are unknown to Plaintiff at this time, the Plan's most recent Form 5500 filing reports that as of December 31, 2019, there were 563 participants in the Plan.

115.     Questions of law and fact common to the Class as a whole include, but are not limited to, the following:

    i.   Whether GreatBanc served as Trustee in the Plan's acquisition of EYP stock;

    ii.  Whether GreatBanc was an ERISA fiduciary of the Plan;

    iii. Whether GreatBanc caused the Plan to engage in prohibited transactions under ERISA by permitting the Plan to purchase EYP stock and take a loan from a party in interest;

    iv.  Whether GreatBanc engaged in a good faith valuation of the EYP stock in connection with the ESOP Transaction;

    v.   Whether GreatBanc caused the Plan to pay more than fair market value for EYP stock;

vi.    Whether GreatBanc engaged in a prohibited transaction under ERISA by acting on behalf of a party adverse to the Plan and its participants in the ESOP Transaction;

vii.   Whether GreatBanc engaged in a prohibited transaction under ERISA by receiving consideration for its own account in the ESOP Transaction;

viii.  Whether GreatBanc breached its fiduciary duty to undertake an appropriate and independent investigation of the fair market value of EYP stock in or about June 2016;

ix.    Whether EYP was a party in interest;

x.     Whether the Selling Shareholders were parties in interest;

xi.    Whether Defendant Shareholders, as parties in interest, participated in the prohibited transactions;

xii.   The amount of losses suffered by the Plan and its participants as a result of GreatBanc's ERISA violations; and

xiii.  The appropriate relief for GreatBanc's violations of ERISA.

116.   Plaintiff's claims are typical of those of the Class. For example, Plaintiff, like other Plan participants in the Class, suffered a diminution in the value of her Plan account because the Plan paid above fair market value and took on excessive loans for EYP stock, resulting in her being allocated fewer shares of stock, and she continues to suffer such losses in the present because GreatBanc failed to correct the overpayment by the Plan.

117.   Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

118.     Class certification of Plaintiff's Claims for Relief for the alleged violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for GreatBanc, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

119.     The names and addresses of the Class members are available from the Plan. Notice will be provided to all members of the Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendants and for the following relief:

A.     Declare that Defendant GreatBanc caused the Plan to engage in and itself engaged in prohibited transactions and thereby breached its duties under ERISA;

B.     Declare that Defendant Shareholders engaged in a prohibited transaction with the Plan in violation of ERISA;

C.     Declare that Defendant GreatBanc breached its fiduciary duties under ERISA to the Plan and the class members;

D.     Order each Defendant found to have violated ERISA to jointly and severally make good to the Plan and/or to any successor trust(s) the losses resulting from the breaches of ERISA and restore any profits it, he, or she has made through use of assets of the Plan;

E.     Order that Defendants provide other appropriate equitable relief to the Plan and its participants and beneficiaries, including but not limited to surcharge, providing an

accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

F.     Order the proceeds of any recovery for the Plan to be allocated to the accounts of the class members to make them whole for any injury that they suffered as a result of the breaches of ERISA in accordance with the Court's declaration;

G.     Order the allocation to the accounts of the class members of the additional shares of stock that would have been allocated but for the Plan's overpayment on company stock and Defendants' breaches of ERISA;

H.     Declare that the indemnification agreement between Defendant GreatBanc and EYP violates ERISA § 410, 29 U.S.C. § 1110;

I.     Order Defendant GreatBanc to reimburse EYP for any money paid by EYP under any indemnification agreement between GreatBanc and EYP, plus interest;

J.     Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

K.     Order Defendant GreatBanc to disgorge any fees it received in conjunction with its services as Trustee for the Plan in the ESOP Transaction as well as any earnings and profits thereon;

L.     Order Defendants to pay prejudgment and post-judgment interest;

M.     Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiff as class representative and her counsel as class counsel; and

N.     Award such other and further relief as the Court deems equitable and just.

Dated:    January 21, 2021                    Respectfully submitted,

                                              **BAILEY & GLASSER LLP**

                                              */s/ Patrick O. Muench*
                                              Patrick O. Muench
                                              333 S. Wabash Ave.
                                              Suite 2736
                                              Chicago, IL 60604
                                              Telephone: (312) 995-7143
                                              Facsimile: (304) 342-1110
                                              pmuench@baileyglasser.com

                                              Ryan T. Jenny
                                              Gregory Y. Porter (*pro hac vice* to be filed)
                                              1055 Thomas Jefferson Street, NW
                                              Suite 540
                                              Washington, DC 20007
                                              Telephone: (202) 463-2101
                                              Facsimile: (202) 463-2103
                                              rjenny@baileyglasser.com
                                              gporter@baileyglasser.com

                                              *Attorneys for Plaintiff*